SHORT *v.* MAULDIN.

5-1092     296 S. W. 2d 197

Opinion delivered December 10, 1956.

*J. B. Reed,* for appellant.

*Madrid Lofton,* for appellee.

GEORGE ROSE SMITH, J. This boundary line dispute is in substance a suit for the possession of land, which was tried without objection in a court of equity. The single question is whether the boundary between the parties' tracts is a straight line or a crooked one. The chancellor entered a decree declaring the line to be straight, which resulted in the dismissal of the appellant's complaint.

At the trial all the facts were stipulated. W. A. Gatewood formerly owned the 92.74 acres across which the disputed boundary runs. Gatewood sold the east forty acres to J. W. Thomas, and, after Thomas's death, his widow and heirs conveyed that tract to the appellant Short, on April 6, 1949.

In October of 1951 it was agreed by Gatewood, the Thomases, and Short that the two deeds mentioned above did not describe exactly the land that Gatewood intended. Gatewood and Short employed a surveyor and went upon the land to survey and mark Short's tract. All four corners of the tract were correctly established and marked. The survey coincided with fence rows along the north, east, and south sides, but there was no visible indication of the west line, which is now in controversy.

It is stipulated that the surveying party intended to, and attempted to, mark a straight line from the established southwest corner to the established northwest corner of the Short tract. The surveyor, however, used only a pocket compass to run the line, which is a quarter of a mile long. The boundary was marked by stakes where it crossed open land and by blazes where it went

through woodland. When the survey was completed Gatewood declared that the line just chained, blazed, and staked would forever be the line between Short's land and the land lying immediately west of it. Short agreed, and on the following day Gatewood executed a deed to Short containing the new description. This deed is not in the record, and we must assume that it purported to describe a straight line, as the plaintiff has not met the burden of proving the contrary.

Gatewood and Short took possession of their respective parcels, did not question the blazed line in the woods, and cultivated their fields up to the turnrow that replaced the row of stakes. In 1953 Gatewood sold his tract to the defendant Mauldin, who also respected the marked line until about the end of 1954. Mauldin then contended that the boundary was not straight and took possession of a small area on Short's side of the visible line. This suit to recover possession was filed by Short on June 8, 1955. The record does not show that the line now claimed by Mauldin is in fact straight, but this omission is immaterial, not only because the burden of proof was on Short but also because the decree merely declared that the disputed boundary is a straight line.

In seeking a reversal the appellant relies upon the familiar rule that when the true location of a boundary is uncertain or in dispute the adjoining landowners may fix the line by oral agreement followed by possession, even though their possession pursuant to the agreement does not continue for the statutory period of seven years. *Payne* v. *McBride*, 96 Ark. 168, 131 S. W. 463, Ann. Cas. 1912B, 661. It is accordingly contended that the agreement between Gatewood and Short, which was confirmed by possession for slightly more than three years, established the line marked on the ground as an agreed boundary.

This contention overlooks the fact that a boundary line agreement may involve an unconscious mistake as well as a conscious one. In the usual case of an oral agreement with respect to an unascertained or disputed boundary the parties realize that they do not know the

location of the true line as determined by the controlling government survey. They deliberately take the possibility of mistake into account and jointly assume the risk that the agreed line may not coincide with the true line. In at least a figurative sense their agreement and ensuing possession constitute an accord and satisfaction of their dispute. Subsequent proof that the agreed line differs from the true line does not afford a basis for relief on the ground of mutual mistake, for that possibility of error was consciously considered and is the very matter that the agreement undertook to foreclose.

It is not to be supposed, however, that boundary line agreements are uniquely immune from the operation of ordinary rules governing the effect of unconscious mutual mistake. To the contrary, they exemplify the broad principle that, although the parties to a transaction may agree that it is to be final and not to be affected by a mistake, the agreement may nevertheless be rescinded, "as in the case of all agreements, if the basis upon which it was made is mistaken." Rest., Restitution, § 11. We have recognized that this broad principle applies to contracts of accord and satisfaction, *Jewell* v. *General Air Conditioning Corp.*, 226 Ark. 304, 289 S. W. 2d 881, and we have applied it to a boundary line agreement resulting from unconscious mutual mistake. *Randleman* v. *Taylor,* 94 Ark. 511, 127 S. W. 723, 140 A. S. R. 141. In the latter case it was said: "The evidence in the case at bar shows that appellant and appellee agreed upon a boundary line under the belief that it was the true line, when in fact it was not . . . In short, it was an erroneous line agreed upon by mistake. In such cases the agreement is not binding, but may be set aside by either party when the mistake is discovered, unless there is some element of estoppel which prevents him."

In the present case Gatewood and Short went upon the land with the conscious purpose of correcting the description in the earlier deeds. They accomplished that purpose by establishing the four corners of the Short tract and by the execution of a deed conforming to those corners. As far as is shown by the stipulation of facts,

both assumed that the surveyor had marked the west boundary in accordance with their joint intention that the line be straight. It was upon that tacit premise that the staked and blazed line was agreed to. There is nothing to indicate that either party deliberately took into account the possibility that the surveyor had made an error, for that was not the matter that they were consciously attempting to set at rest. In these circumstances their mutual mistake was an unforeseen one and may be corrected by either party at any time before their ensuing possession has ripened into title.

Affirmed.